**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| RECTICEL NORTH AMERICA, INC., <u>et al.</u>,[1] | Case No. 09-73411 (PJS) |
| Debtors. | Jointly Administered |

**DEBTORS' JOINT PLAN OF REORGANIZATION UNDER**
**CHAPTER 11 OF THE BANKRUPTCY CODE**

Dated: February 8, 2010

Robert S. Hertzberg (P30261)
Ross A. Hoogerhyde (P72559)
PEPPER HAMILTON LLP
100 Renaissance Center, Suite 3600
Detroit, MI 48243
Telephone: (313) 259-7110
Facsimile: (313) 259-7926

*Counsel to Debtors and Debtors in Possession*

---

[1]  The chapter 11 cases of Recticel North America, Inc. (Case No. 09-73411 (PJS)) and Recticel Interiors North America, LLC (Case No. 09-73419 (PJS)) are being jointly administered for procedural purposes only.

#12012526 v6

09-73411-pjs    Doc 312    Filed 02/08/10    Entered 02/08/10 13:07:43    Page 1 of 38

# TABLE OF CONTENTS

Page

ARTICLE I : DEFINED TERMS, RULES OF INTERPRETATION AND COMPUTATION OF TIME....................................................................1

Section 1.1 *Defined Terms.* ................................................1

Section 1.2 *Rules of Interpretation and Computation of Time.* ..........7

ARTICLE II UNCLASSIFIED CLAIMS ........................................8

Section 2.1 *Administrative Claims.* ......................................8

Section 2.2 *Claims Bar Date for Administrative Claims* ..................8

Section 2.3 *Priority Tax Claims.* ........................................9

Section 2.4 *Professional Fees.* ..........................................9

Section 2.5 *Claims Under DIP Credit Agreement.* ..........................9

ARTICLE III CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS ....................................................10

Section 3.1 *Summary.* ....................................................10

Section 3.2 *Classification.* ..............................................10

Section 3.3 *Treatment and Voting Rights of Claims and Equity Interests.* ......10

Section 3.4 *Cram Down.* ..................................................15

Section 3.5 *Confirmation of all Cases.* ..................................15

Section 3.6 *Discharge of Claims.* ........................................15

Section 3.7 *Special Provisions Governing Unimpaired Claims.* ............15

ARTICLE IV MEANS FOR IMPLEMENTATION OF THE PLAN....................15

Section 4.1 *Compromise of Controversies.* ................................15

Section 4.2 *Vesting of Assets.* ..........................................16

Section 4.3 *Continued Corporate Existence.* ..............................16

Section 4.4 *Release of Liens and Claims* ................................16

Section 4.5 *Exit Facility.* ..............................................16

Section 4.6 *Certificate of Incorporation and Bylaws* ....................17

Section 4.7 *Corporate Action.* ..........................................17

Section 4.8 *Sources of Cash for Plan Distribution.* ......................17

ARTICLE V TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ............................................17

i

Section 5.1 *Assumption of Executory Contracts and Unexpired Leases.* .........................17

Section 5.2 *Cure of Defaults for Assumed Executory Contracts and Unexpired Leases.*.18

Section 5.3 *Rejection of Executory Contracts and Unexpired Leases.* .............................19

Section 5.4 *Claims Based on Rejection of Executory Contracts or Unexpired Leases.* ...19

Section 5.5 *Indemnification of Directors, Officers and Employees.* ................................19

Section 5.6 *Compensation and Benefit Programs.* ..........................................................20

Section 5.7 *Contracts and Leases Entered Into After the Petition Date* ..........................20

ARTICLE VI PROVISIONS GOVERNING DISTRIBUTIONS .............................................20

Section 6.1 *Date of Distributions.* .....................................................................................20

Section 6.2 *Special Rules for Distributions to Holders of Disputed Claims.* ....................20

Section 6.3 *Disbursing Agent.* ............................................................................................20

Section 6.4 *Delivery of Distributions and Undeliverable or Unclaimed Distributions.* ....21

Section 6.5 *Setoff.* ...............................................................................................................21

Section 6.6 *Withholding and Reporting Requirements.* ....................................................22

ARTICLE VII PROCEDURES FOR RESOLVING DISPUTED CLAIMS ............................22

Section 7.1 *Allowance of Claims.* .......................................................................................22

Section 7.2 *Prosecution of Objections to Claims.* ..............................................................22

Section 7.3 *Estimation of Claims.* ......................................................................................22

Section 7.4 *Payments and Distributions on Disputed Claims.* .........................................23

Section 7.5 *Expungement or Adjustment to Claims Without Objection.* ...........................23

Section 7.6 *Deadline to File Objections to Claims.* ...........................................................23

Section 7.7 *Late Filed Claims.* ...........................................................................................23

Section 7.8 *Amendments to Claims.* ...................................................................................23

ARTICLE VIII CONDITIONS PRECEDENT TO CONFIRMATION
AND EFFECTIVE DATE ..............................................................................24

Section 8.1 *Conditions Precedent to Confirmation.* ..........................................................24

Section 8.2 *Conditions Precedent to the Effective Date.* ...................................................24

Section 8.3 *Waiver of Conditions.* ......................................................................................24

Section 8.4 *Modification of Plan.* ......................................................................................25

Section 8.5 *Effect of Withdrawal or Revocation.* ...............................................................25

Section 8.6 *Reservation of Rights.* .....................................................................................25

Section 8.7 *Substantial Consummation of Plan.* ...............................................................25

ARTICLE IX EFFECT OF PLAN CONFIRMATION ............................................................25

    Section 9.1 *Binding Effect.* ...........................................................................................25

    Section 9.2 *Discharge of Claims.* .................................................................................25

    Section 9.3 *Releases by the Debtors.* ...........................................................................25

    Section 9.4 *Release by Holders of Claims.* ..................................................................26

    Section 9.5 *Exculpation and Limitation of Liability.* ...................................................27

    Section 9.6 *Injunction.* .................................................................................................27

    Section 9.7 *Term of Bankruptcy Injunction or Stays.* ..................................................28

    Section 9.8 *Termination of Subordination Rights and Settlement of Related Claims*.......28

    Section 9.9 *Preservation of Rights of Action.* ..............................................................28

ARTICLE X RETENTION OF JURISDICTION ........................................................................28

ARTICLE XI MISCELLANEOUS PROVISIONS.....................................................................30

    Section 11.1 *Payment of Statutory Fees*.........................................................................30

    Section 11.2 *Governing Law.* ........................................................................................30

    Section 11.3 *Severability.* ..............................................................................................31

    Section 11.4 *Inconsistency.* ............................................................................................31

    Section 11.5 *Filing of Additional Documents.* ...............................................................31

    Section 11.6 *Service of Documents.* ...............................................................................31

    Section 11.7 *Section 1125(e) of the Bankruptcy Code.* ..................................................32

    Section 11.8 *Exemption from Certain Transfer Taxes.* ...................................................32

    Section 11.9 *Tax Reporting and Compliance*..................................................................32

    Section 11.10 *Schedules and Exhibits.* ...........................................................................33

    Section 11.11 *No Prejudice*.............................................................................................33

    Section 11.12 *Allocation of Payments*.............................................................................33

    Section 11.13 *Dissolution of the Committee.* ..................................................................33

    Section 11.14 *Return of Security Deposits.* .....................................................................33

    Section 11.15 *Successors and Assigns.* ...........................................................................33

    Section 11.16 *Reservation of Rights.* ..............................................................................34

    Section 11.17 *Entire Agreement.*.....................................................................................34

## DEBTORS' JOINT PLAN OF REORGANIZATION
## UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

Recticel North America, Inc. and Recticel Interiors North America, LLC, debtors and debtors in possession in the above-captioned cases, hereby respectfully propose the following joint plan of reorganization under chapter 11 of the Bankruptcy Code. The only Entities entitled to vote on the Plan are the Holders of RINA General Unsecured Claims and Holders of RUNA General Unsecured Claims. Prior to voting to accept or reject the Plan, such Holders are encouraged to read the Plan, the accompanying Disclosure Statement, and their respective exhibits and schedules, in their entirety. No materials other than the Plan, the Disclosure Statement, and their respective exhibits and schedules have been authorized by the Debtors for use in soliciting acceptances or rejections of the Plan.

## ARTICLE I:
## DEFINED TERMS, RULES OF INTERPRETATION AND COMPUTATION OF TIME

Section 1.1 *Defined Terms.*

Unless the context otherwise requires, the following terms shall have the following meanings when used in capitalized form in the Plan:

"**Administrative Claims**" means all Claims against any Debtor for costs and expenses of administration described in section 503(b) and entitled to priority under Section 507(a)(2) or 507(b) of the Bankruptcy Code, including for (a) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estates and operating the businesses of the Debtors, (b) compensation for services and reimbursement of expenses under section 330(a) or 331 of the Bankruptcy Code, including Professional fees and expenses, (c) any actual indebtedness or obligations, other than under the DIP Credit Agreement, incurred or assumed by the Debtors during the Chapter 11 Cases in connection with the conduct of their business, (d) any administrative claims allowed by Final Order of the Bankruptcy Court in connection with the assumption of contracts or otherwise and (e) all fees and charges assessed against the Estates under 28 U.S.C. §§ 1911-1930.

"**Allowed**" means, with respect to any Claim, such Claim or portion thereof: (a) as to which no objection or request for estimation has been Filed as of the Claims Objection Deadline, no litigation has commenced as of the Claims Objection Deadline, and the Debtors otherwise have assented to the validity thereof (and as to which a proof of claim has been properly and timely Filed to the extent required by the Plan or any order of the Bankruptcy Court); (b) as to which any objection or request for estimation that has been Filed as of the Claims Objection Deadline has been settled, waived, withdrawn or denied by a Final Order; or (c) that is allowed (i) pursuant to the terms of a Final Order, (ii) pursuant to the terms of an agreement by and among the Holder of such Claim and the Debtors (or the Reorganized Debtors, as the case may be) or (iii) under the terms of the Plan.

"**Assets**" means, with respect to any Debtor, all of such Debtor's right, title and interest of any nature in property of any kind, wherever located, as specified in section 541 of the Bankruptcy Code.

"**Bankruptcy Code**" means title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*, as in effect on the Petition Date, together with any amendments made thereto subsequent to the Petition Date, to the extent that any such amendments are applicable to the Chapter 11 Cases.

"**Bankruptcy Court**" means the United States Bankruptcy Court for the Eastern District of Michigan, Sothern Division, or such other court having jurisdiction over the Chapter 11 Cases or any proceeding within, or appeal of an order entered in, the Chapter 11 Cases.

"**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure, the Official Bankruptcy Forms or the local rules of the Bankruptcy Court, together with any amendments made thereto subsequent to the Petition Date, to the extent that any such amendments are applicable to the Chapter 11 Cases.

"**Business Day**" means any day, other than a Saturday, Sunday or a "legal holiday" (as such term is defined in Bankruptcy Rule 9006(a)).

"**Cash**" means legal tender of the United States of America.

"**Causes of Action**" means all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, rights to legal remedies, rights to equitable remedies, rights to payment and claims, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances and trespasses of, or belonging to, the Estates, whether known or unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured and whether asserted or assertable directly or indirectly or derivatively, in law, equity or otherwise.

"**Chapter 11 Cases**" means the jointly-administered cases under chapter 11 of the Bankruptcy Code commenced by the Debtors in the Bankruptcy Court.

"**Chapter 11 Parties**" means, collectively, (a) all Persons engaged or retained by the Debtors in connection with the Chapter 11 Cases (including in connection with the preparation of, and analyses relating to, the Disclosure Statement, the Plan, the DIP Credit Agreement, the Exit Facility and the Exit Facility Documents), (b) the DIP Lender, (c) the Exit Facility Lender, (d) the Committee, (e) all Persons engaged or retained by the parties listed in (b) through (d) of this definition in connection with the Chapter 11 Cases (including in connection with the preparation of, and analyses relating to, the Disclosure Statement, the Plan, the DIP Credit Agreement, the Exit Facility and the Exit Facility Documents), and (f) solely in their respective capacities as such, any and all affiliates, members, managers, directors, shareholders, partners, representatives, employees, attorneys, advisors and agents of any of the foregoing.

"**Claim**" means a claim as defined in section 101(5) as supplemented by section 102(2) of the Bankruptcy Code against any Debtor, whether or not asserted.

"**Claims Bar Date**" means, as applicable, (a) January 29, 2010 for filing proof of any claim against the Debtors (whether secured, unsecured priority or unsecured non-priority) that arose prior to the Petition Date, including Administrative Claims under 11 U.S.C. § 503(b)(9), (b) the Governmental Bar Date or (c) as to a particular Claim or Claims, such other

period of limitation as may be specifically fixed by this Plan or an order of the Bankruptcy Court for Filing such Claim or Claims.

"**Claims Objection Deadline**" means, for each Claim, the later of (a) 120 days after the Effective Date and (b) such other period of limitation as may be specifically fixed by an order of the Bankruptcy Court for objecting to such Claims, as such date may be from time to time extended by the Bankruptcy Court without further notice to parties in interest.

"**Class**" means a class of Claims or Equity Interests as set forth in ARTICLE III hereof.

"**Committee**" means the statutory committee of unsecured creditors of the Debtors appointed by the U.S. Trustee in the Chapter 11 Cases on November 5, 2009, pursuant to section 1102 of the Bankruptcy Code.

"**Confirmation Date**" means the date upon which the Confirmation Order is entered on the docket maintained by the Bankruptcy Court pursuant to Bankruptcy Rule 5003.

"**Confirmation Hearing**" means the hearing(s) to be held by the Bankruptcy Court to consider confirmation of the Plan under section 1129 of the Bankruptcy Code.

"**Confirmation Order**" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

"**Covered Persons**" means all directors, officers and other employees of the Debtors, as of the Petition Date, other than such directors, officers and other employees who are expelled or terminated for cause between the Petition Date and the Effective Date.

"**Cure Amount**" means the aggregate monetary obligation required to be paid a counterparty to an assumed executory contract or unexpired lease pursuant to section 365(b)(1) of the Bankruptcy Code.

"**Debtors**" means, collectively and severally, Recticel North America, Inc. and Recticel Interiors North America, LLC, as debtors and debtors in possession in the Chapter 11 Cases.

"**DIP Credit Agreement**" means the $10 million debtor-in-possession credit agreement, dated October 29, 2009, by and among the Debtors, as borrowers, and the DIP Lender, and including all other documents related thereto, as such credit agreement may be amended, supplemented or modified from time to time in accordance with the terms thereof.

"**DIP Lender**" means Recticel N.V./S.A.

"**DIP Order**" means, collectively, any interim and final orders approving the DIP Credit Agreement.

"**Disallowed**" means, with respect to any Claim, such Claim or portion thereof that has been disallowed or expunged by a Final Order.

-3-

"**Disbursing Agent**" means the Reorganized Debtors, or any other Person designated by the Debtors prior to the Confirmation Hearing, in the capacity as disbursing agent under the Plan.

"**Disclosure Statement**" means the solicitation and disclosure statement relating to the Plan (including any exhibits and schedules thereto), as such solicitation and disclosure statement may be amended, supplemented, or modified from time to time.

"**Disputed**" means, with respect to any Claim, (i) such Claim or portion thereof as to which the Debtors have interposed an objection or request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules or that otherwise is disputed by the Debtors in accordance with applicable law, which objection has not been withdrawn or determined by a Final Order; or (ii) such Claim or portion thereof that has not been Allowed by a Final Order and as to which (y) the Reorganized Debtors' deadline to object to such Claim under Section 7.6 of the Plan, as the same may be extended by the Court, has not yet expired; and (z) neither the Debtors nor the Reorganized Debtors have agreed in writing is Allowed.

"**Effective Date**" means the Business Day on which all conditions specified in ARTICLE VIII have been satisfied or, if capable of being waived, have been waived in accordance with Section 8.3.

"**Entity**" means an "entity" as defined in section 101(15) of the Bankruptcy Code.

"**Equity Interests**" means all outstanding ownership interests in any of the Debtors, including any interest evidenced by common or preferred stock, membership interest, option or other right to purchase or otherwise receive any ownership interest in any of the Debtors, or any right to payment or compensation based upon any such interest, whether or not such interest is owned by the holder of such right to payment or compensation.

"**Estates**" means the estates of the Debtors created pursuant to section 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Cases.

"**Existing Director**" means any individual serving, as of the Petition Date (or at any subsequent date through the Effective Date), as a director of any of the Debtors.

"**Existing Employee**" means any individual employed by any of the Debtors as of the Petition Date (or at any subsequent date through the Effective Date) who is not an Existing Officer or Existing Director.

"**Existing Officer**" means any individual serving, as of the Petition Date (or at any subsequent date through the Effective Date), as an officer of any of the Debtors.

"**Exit Facility**" means the $10 million credit agreement, which will be entered into by and among the Reorganized Debtors, as borrowers, and the Exit Facility Lender on the Effective Date, and may be structured as an amendment to the DIP Credit Agreement. A form of the credit agreement for the Exit Facility will be set forth in the Plan Supplement.

"**Exit Facility Documents**" means the agreements, notes, certificates, documents and instruments, and all exhibits, schedules and annexes thereto, entered into in connection with the Exit Facility.

"**Exit Facility Lender**" means Recticel N.V./S.A.

"**File**", "**Filed**" or "**Filing**" means file, filed or filing with the Bankruptcy Court (or agent thereof) in connection with the Chapter 11 Cases.

"**Final Order**" means an order or judgment entered by the Bankruptcy Court or other court of competent jurisdiction: (a) which has not been reversed, stayed, modified, amended or revoked, and as to which (i) any right to appeal or seek certiorari, review, reargument, stay or rehearing has been waived or (ii) the time to appeal or seek certiorari, review, reargument, stay or rehearing has expired and no appeal or petition for certiorari, review, reargument, stay or rehearing is pending; or (b) as to which an appeal has been taken or petition for certiorari, review, reargument, stay or rehearing has been Filed and (i) such appeal or petition for certiorari, review, reargument, stay or rehearing has been resolved by the highest court to which the order or judgment was appealed or from which certiorari, review, reargument, stay or rehearing was sought and (ii) the time to appeal further or seek certiorari, further review, reargument, stay or rehearing has expired and no such further appeal or petition for certiorari, further review, reargument, stay or rehearing is pending; *provided*, *however*, that no order or judgment shall fail to be a "Final Order" solely because of the possibility that a motion pursuant to section 502(j) or 1144 of the Bankruptcy Code, Rule 59 or 60 of the Federal Rules of Civil Procedure or Bankruptcy Rule 9024 may be Filed with respect to such order or judgment.

"**Governmental Bar Date**" means April 27, 2010.

"**Holder**" means the beneficial holder of any Claim or Equity Interest.

"**Impaired**" means, with respect to a Claim or Equity Interest, such Claim or Equity Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

"**Inteva Settlement Agreement**" means that certain settlement agreement by and between RINA and Inteva Products, LLC dated January 13, 2010.

"**JCI Settlement Agreement**" means that certain settlement agreement by and between RINA and Johnson Controls, Inc. dated December 23, 2009.

"**Lien**" means a lien as defined in section 101(37) of the Bankruptcy Code on or against any of the Debtors' property or the Estates.

"**Person**" means a "person" as defined in section 101(41) of the Bankruptcy Code.

"**Petition Date**" means October 29, 2009, the date on which the Debtors filed their petitions for relief commencing the Chapter 11 Cases.

"**Plan**" means this joint plan of reorganization under chapter 11 of the Bankruptcy Code, as may be amended, supplemented or modified from time to time in accordance with the terms hereof, and in accordance with the terms of the Bankruptcy Code and the Bankruptcy Rules.

"**Plan Documents**" means the agreements, documents and instruments to be entered into as of the Effective Date as contemplated by, and in furtherance of, the Plan.

"**Plan Supplement**" means the compilation of documents and exhibits Filed not later than ten (10) calendar days prior to the first day of the Confirmation Hearing, as such documents and exhibits may be altered, amended, modified or supplemented from time to time in accordance with the Bankruptcy Code, the Bankruptcy Rules and the terms of this Plan.

"**Priority Tax Claims**" means all Claims against any Debtor of the kind specified in section 507(a)(8) of the Bankruptcy Code.

"**Professionals**" means (a) all professionals employed in the Chapter 11 Cases pursuant to sections 327, 328, or 1103 of the Bankruptcy Code or otherwise and (b) all professionals or other entities seeking compensation or reimbursement of expenses in connection with the Chapter 11 Cases pursuant to section 503(b)(4) of the Bankruptcy Code.

"**Releasees**" means, collectively, (a) the Existing Officers, (b) Existing Directors, (c) Existing Employees and (d) the Chapter 11 Parties.

"**Reorganized Debtor**" means any Debtor and any successor thereto, by merger, consolidation or otherwise, on or after the Effective Date.

"**RINA**" means Recticel Interiors North America, LLC.

"**RINA Equity Interests**" means 100% of the Equity Interests in RINA held by RUNA.

"**RINA General Unsecured Claims**" means all Claims against RINA that are not Administrative Claims, Priority Tax Claims, RINA Other Secured Claims, RINA Other Priority Claims, RINA Intercompany Claims or RINA Equity Interests.

"**RINA Intercompany Claims**" means all Claims against RINA held by Recticel N.V./S.A., RUS, RUNA or any other direct or indirect subsidiary of Recticel N.V./S.A excluding the RINA Intercompany Loans.

"**RINA Intercompany Loans**" means all Claims against RINA held by RUS pursuant to that certain agreement by and between RINA and RUS dated December 28, 2005, as amended or supplemented from time to time and including all exhibits and supplements thereto.

"**RINA Other Priority Claims**" means all Claims against RINA entitled to priority in right of payment under section 507(a) of the Bankruptcy Code that are not Administrative Claims or Priority Tax Claims.

"**RINA Other Secured Claims**" means all Secured Claims against RINA that are not Claims under the DIP Credit Agreement.

"**RUNA**" means Recticel North America, Inc. a/k/a Recticel UREPP North America, Inc.

"**RUNA Equity Interests**" means 100% of the Equity Interests in RUNA held by RUS.

"**RUNA General Unsecured Claims**" means all Claims against RUNA that are not Administrative Claims, Priority Tax Claims, RUNA Other Secured Claims, RUNA Other Priority Claims, RUNA Intercompany Claims or RUNA Equity Interests.

"**RUNA Intercompany Claims**" means all Claims against RUNA held by Recticel N.V./S.A., RUS, RINA or any other direct or indirect subsidiary of Recticel N.V./S.A but excluding the RUNA Intercompany Loans.

"**RUNA Intercompany Loans**" means all Claims against RUNA held by RUS pursuant to that certain agreement by and between RUNA and RUS dated April 28, 2003, as amended or supplemented from time to time and including all exhibits and supplements thereto.

"**RUNA Other Priority Claims**" means all Claims against RUNA entitled to priority in right of payment under section 507(a) of the Bankruptcy Code that are not Administrative Claims or Priority Tax Claims.

"**RUNA Other Secured Claims**" means all Secured Claims against RUNA that are not Claims under the DIP Credit Agreement.

"**RUS**" means RUS, Inc.

"**Secured Claims**" means all Claims against any Debtor that are secured by a Lien on, or security interest in, property of such Debtor, or that has the benefit of rights of setoff under section 553 of the Bankruptcy Code, but only to the extent of the value of the Holder's interest in such Debtor's interest in such property, or to the extent of the amount subject to setoff, which value shall be determined as provided in section 506 of the Bankruptcy Code.

"**Unimpaired**" means, with respect to any Claim or Equity Interest, such Claim or Equity Interest that is not Impaired.

"**U.S. Trustee**" means the United States Trustee for the Eastern District of Michigan.

Section 1.2 *Rules of Interpretation and Computation of Time.*

(a)    For purposes of the Plan: (i) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and the neuter gender; (ii) any reference in the Plan to a contract, instrument, release,

indenture or other agreement or document being in a particular form or on particular terms and conditions means that such document substantially shall be in such form or substantially on such terms and conditions; (iii) any reference in the Plan to an existing document or exhibit Filed, or to be Filed, shall mean such document or exhibit, as it may have been or may be amended, modified or supplemented; (iv) unless otherwise specified, all references in the Plan to Sections, Articles and Exhibits are references to Sections, Articles and Exhibits of or to the Plan; (v) the words "herein" and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (vi) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (vii) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and (viii) any term used in capitalized form in the Plan that is not defined in the Plan but is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

(b)     In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

## ARTICLE II
## UNCLASSIFIED CLAIMS

Section 2.1 *Administrative Claims*.

Each Holder of an Allowed Administrative Claim shall receive, in full satisfaction and discharge thereof, Cash equal to the unpaid amount of such Allowed Administrative Claim (except to the extent that such Holder agrees to less favorable treatment thereof) either on, or as soon as practicable after, the latest of (a) the Effective Date, (b) the date on which such Administrative Claim becomes Allowed, (c) the date on which such Administrative Claim becomes due and payable and (d) such other date as mutually may be agreed to by such Holder and the Debtors. Notwithstanding the foregoing, Allowed Administrative Claims representing liabilities incurred by the Debtors in the ordinary course of business during the Chapter 11 Cases, shall be paid in the ordinary course of business in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents related to such transactions, and Holders of Claims related to such ordinary course liabilities are not required to File or serve any request for payment of such Administrative Claims.

Section 2.2 *Claims Bar Date for Administrative Claims*.

Other than Administrative Claims arising from a liability incurred and payable in the ordinary course of business by a Debtor, and not past due, and except as otherwise provided for in Section 2.1, Section 2.4 and Section 2.5 of the Plan, unless previously Filed, requests for payment of Administrative Claims must be Filed and served on the Reorganized Debtors no later than 45 days after the Effective Date. Holders of Administrative Claims that are required to File and serve a request for payment of such Administrative Claims pursuant to this Section 2.2 that do not File and serve such a request by the applicable Claims Bar Date shall be forever barred, estopped and enjoined from asserting such Administrative Claims against the Debtors or the Reorganized Debtors or their Estates and property and such Administrative Claims shall be deemed discharged as of the Effective Date. Objections to such requests must be Filed and

served by the later of (a) 120 days after the Effective Date and (b) 60 days after the Filing of the applicable request for payment of the Administrative Claim, if applicable, as the same may be modified or extended from time to time by the Bankruptcy Court and/or motion of a party in interest approved by the Bankruptcy Court.

Section 2.3 *Priority Tax Claims*.

Each Holder of an Allowed Priority Tax Claim shall receive, in full satisfaction and discharge thereof, Cash equal to the unpaid amount of such Allowed Priority Tax Claim (except to the extent that such Holder agrees to less favorable treatment thereof) either on, or as soon as practicable after, the latest of (a) the Effective Date, (b) the date on which such Priority Tax Claim becomes Allowed, (c) the date on which such Priority Tax Claim becomes due and payable and (d) such other date as mutually may be agreed to by and among such Holder and the Debtors; *provided, however*, that the Debtors shall be authorized, at their option, and in lieu of payment in full of an Allowed Priority Tax Claim, to make deferred Cash payments on account thereof in the manner and to the extent permitted under section 1129(a)(9)(C) of the Bankruptcy Code.

Section 2.4 *Professional Fees*.

Each Professional requesting compensation pursuant to sections 330, 331 or 503(b) of the Bankruptcy Code or otherwise, for services rendered in connection with the Chapter 11 Cases prior to the Confirmation Date, shall File an application for allowance of final compensation and reimbursement of expenses in the Chapter 11 Cases on or before the forty-fifth (45th) day following the Effective Date. Objections to any application for allowance of final compensation and reimbursement of expenses in the Chapter 11 Cases must be Filed and served on the Reorganized Debtors and the requesting party no later than thirty (30) days after the Filing of the applicable application. The Debtors or the Reorganized Debtors, as applicable, may pay the charges incurred by the Debtors on and after the Confirmation Date for any Professional's fees, disbursements, expenses or related support services without application to or approval by the Bankruptcy Court.

Section 2.5 *Claims Under DIP Credit Agreement*.

On the Effective Date, all outstanding obligations of the Debtors to the DIP Lender under the DIP Credit Agreement shall be rolled up into a revolver provided for under the Exit Facility. No provision of the Plan, Confirmation Order, Plan Supplement or other related document may be modified to provide for a different treatment of Claims under the DIP Credit Agreement without the written consent of the DIP Lender. Notwithstanding this Section 2.5, the provisions of the DIP Order that provide that they shall survive the confirmation and consummation of the Plan shall so survive and shall remain in full force and effect from and after the Confirmation Date.

# ARTICLE III
## CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

Section 3.1 *Summary.*

This Plan constitutes a separate chapter 11 plan of reorganization for each Debtor. Except for the Claims addressed in ARTICLE II above (or as otherwise set forth herein), all Claims and Equity Interest against a particular Debtor are placed in Classes for each of the Debtors.

The categories of Claims and Equity Interests listed below classify Claims and Equity Interests for all purposes, including for purposes of voting, confirmation and distribution pursuant to this Plan and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code. A Claim or Equity Interest shall be deemed classified in a particular Class only to the extent that such Claim or Equity Interest qualifies within the description of such Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Equity Interest qualifies within the description of such different Class. A Claim or Equity Interest is in a particular Class only to the extent that such Claim or Equity Interest has not been paid or otherwise settled prior to the Effective Date.

Section 3.2 *Classification.*

Claims (except for Administrative Claims and Priority Tax Claims, which are not required to be classified pursuant to section 1123(a)(1) of the Bankruptcy Code) are classified as follows:

| Class | Designation | Impairment | Voting Rights |
|-------|-------------|------------|---------------|
| Class 1A | RINA Other Secured Claims | Unimpaired | Deemed to Accept |
| Class 1B | RUNA Other Secured Claims | Unimpaired | Deemed to Accept |
| Class 2A | RINA Other Priority Claims | Unimpaired | Deemed to Accept |
| Class 2B | RUNA Other Priority Claims | Unimpaired | Deemed to Accept |
| Class 3A | RINA General Unsecured Claims | Impaired | Entitled to Vote |
| Class 3B | RUNA General Unsecured Claims | Impaired | Entitled to Vote |
| Class 4A | RINA Intercompany Claims | Unimpaired | Deemed to Accept |
| Class 4B | RUNA Intercompany Claims | Unimpaired | Deemed to Accept |
| Class 4C | RINA Intercompany Loans | Unimpaired | Deemed to Accept |
| Class 4D | RUNA Intercompany Loans | Unimpaired | Deemed to Accept |
| Class 5A | RINA Equity Interests | Unimpaired | Deemed to Accept |
| Class 5B | RUNA Equity Interests | Unimpaired | Deemed to Accept |

Section 3.3 *Treatment and Voting Rights of Claims and Equity Interests.*

(a)     *Class 1A—RINA Other Secured Claims.*

(i)     *Treatment*: Except to the extent that a Holder of an Allowed RINA Other Secured Claim has been paid before the Effective Date, on or as soon as

-10-

reasonably practicable after the Effective Date, Holders of Allowed RINA Other Secured Claims shall receive one of the following treatments, in the sole discretion of the Debtors, in full and final satisfaction of such Allowed RINA Other Secured Claims: (i) the applicable Debtor or Reorganized Debtor shall pay such Allowed RINA Other Secured Claim in full in Cash including the payment of any interest required to be paid under section 506(b) of the Bankruptcy Code; (ii) the applicable Debtor or the Reorganized Debtor shall deliver the collateral securing any such Allowed RINA Other Secured Claim; or (iii) the applicable Debtor or Reorganized Debtor shall otherwise treat any Allowed RINA Other Secured Claim in any other manner such that the Claim shall be rendered Unimpaired.

(ii)     *Voting*: Class 1A is Unimpaired. Holders of RINA Other Secured Claims are presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code, and, therefore, are not entitled to vote to accept or reject the Plan.

(b)     *Class 1B—RUNA Other Secured Claims.*

(i)     *Treatment*: Except to the extent that a Holder of an Allowed RUNA Other Secured Claim has been paid before the Effective Date, on or as soon as reasonably practicable after the Effective Date, Holders of Allowed RUNA Other Secured Claims shall receive one of the following treatments, in the sole discretion of the Debtors, in full and final satisfaction of such Allowed RUNA Other Secured Claims: (i) the applicable Debtor or Reorganized Debtor shall pay such Allowed RUNA Other Secured Claim in full in Cash including the payment of any interest required to be paid under section 506(b) of the Bankruptcy Code; (ii) the applicable Debtor or the Reorganized Debtor shall deliver the collateral securing any such Allowed RUNA Other Secured Claim; or (iii) the applicable Debtor or Reorganized Debtor shall otherwise treat any Allowed RUNA Other Secured Claim in any other manner such that the Claim shall be rendered Unimpaired.

(ii)     *Voting*: Class 1B is Unimpaired. Holders of RUNA Other Secured Claims are presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code, and, therefore, are not entitled to vote to accept or reject the Plan.

(c)     *Class 2A—RINA Other Priority Claims.*

(i)     *Treatment*: The legal, equitable and contractual rights of Holders of Allowed RINA Other Priority Claims are unaltered. Except to the extent that a Holder of an Allowed RINA Other Priority Claim has been paid prior to the Effective Date or otherwise agrees with RINA to different treatment, each Holder of an Allowed RINA Other Priority Claim shall

#12012526 v6

receive Cash on, or as soon as practicable after, the latest of (w) the Effective Date, (x) the date on which such RINA Other Priority Claim becomes Allowed, (y) the date on which such RINA Other Priority Claim otherwise is due and payable, and (z) such other date as mutually may be agreed to by and among such Holder and RINA.

 (ii)   *Voting*: Class 2A is Unimpaired.  Holders of RINA Other Priority Claims are presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code, and, therefore, are not entitled to vote to accept or reject the Plan.

(d)   *Class 2B—RUNA Other Priority Claims.*

 (i)   *Treatment*:  The legal, equitable and contractual rights of Holders of Allowed RUNA Other Priority Claims are unaltered.  Except to the extent that a Holder of an Allowed RUNA Other Priority Claim has been paid prior to the Effective Date or otherwise agrees with RUNA to different treatment, each Holder of an Allowed RUNA Other Priority Claim shall receive Cash on, or as soon as practicable after, the latest of (w) the Effective Date, (x) the date on which such RUNA Other Priority Claim becomes Allowed, (y) the date on which such RUNA Other Priority Claim otherwise is due and payable, and (z) such other date as mutually may be agreed to by and among such Holder and RUNA.

 (ii)   *Voting*: Class 2B is Unimpaired.  Holders of RUNA Other Priority Claims are presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code, and, therefore, are not entitled to vote to accept or reject the Plan.

(e)   *Class 3A—RINA General Unsecured Claims.*

 (i)   *Treatment*:  Except to the extent that a Holder of an Allowed RINA General Unsecured Claim has been paid prior to the Effective Date or otherwise agrees with RINA to different treatment, each Holder of an Allowed RINA General Unsecured Claim shall receive, in full and final satisfaction of such Allowed RINA General Unsecured Claim, payment in Cash, in full, without interest, on or as soon as practicable after the latest of (w) the Effective Date, (x) the date on which such RINA General Unsecured Claim becomes Allowed, (y) the date on which such RINA General Unsecured Claim otherwise is due and payable, and (z) such other date as mutually may be agreed to by and among such Holder and RINA.

 (ii)   *Voting*:  Class 3A is Impaired.  Holders of RINA General Unsecured Claims are entitled to vote to accept or reject the Plan.

(f)     *Class 3B—RUNA General Unsecured Claims*.

    (i)    *Treatment*:  Except to the extent that a Holder of an Allowed RUNA General Unsecured Claim has been paid prior to the Effective Date or otherwise agrees with RUNA to different treatment, each Holder of an Allowed RUNA General Unsecured Claim shall receive, in full and final satisfaction of such Allowed RUNA General Unsecured Claim, payment in Cash, in full, without interest, on or as soon as practicable after the latest of (w) the Effective Date, (x) the date on which such RUNA General Unsecured Claim becomes Allowed, (y) the date on which such RUNA General Unsecured Claim otherwise is due and payable, and (z) such other date as mutually may be agreed to by and among such Holder and RUNA.

    (ii)    *Voting*:  Class 3B is Impaired.  Holders of RUNA General Unsecured Claims are entitled to vote to accept or reject the Plan.

(g)     *Class 4A—RINA Intercompany Claims*.

    (i)    *Treatment*:  The legal, equitable and contractual rights of Holders of Allowed RINA Intercompany Claims are unaltered.  Except to the extent that a Holder of an Allowed RINA Intercompany Claim has been paid prior to the Effective Date or otherwise agrees with RINA to different treatment, each Holder of an Allowed RINA Intercompany Claim shall receive, in full and final satisfaction of such Allowed RINA Intercompany Claim, payment in full, in Cash, on or as soon as practicable after the latest of (w) December 31, 2010, (x) the date on which such RINA Intercompany Claim becomes Allowed, (y) the date on which such RINA Intercompany Claim otherwise is due and payable, and (z) such other date as mutually may be agreed to by and among such Holder and RINA.

    (ii)    *Voting*:  Class 4A is Unimpaired.  Holders of RINA Intercompany Claims are presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code, and, therefore, are not entitled to vote to accept or reject the Plan.

(h)     *Class 4B—RUNA Intercompany Claims*.

    (i)    *Treatment*:  The legal, equitable and contractual rights of Holders of Allowed RUNA Intercompany Claims are unaltered.  Except to the extent that a Holder of an Allowed RUNA Intercompany Claim has been paid prior to the Effective Date or otherwise agrees with RUNA to different treatment, each Holder of an Allowed RUNA Intercompany Claim shall receive, in full and final satisfaction of such Allowed RUNA Intercompany Claim, payment in full, in Cash, on or as soon as practicable after the latest of (w) December 31, 2010, (x) the date on which such RUNA Intercompany Claim becomes Allowed, (y) the date on which such RUNA Intercompany Claim otherwise is due and payable, and (z) such

#12012526 v6

other date as mutually may be agreed to by and among such Holder and RUNA.

    (ii)    *Voting*:  Class 4B is Unimpaired.  Holders of RUNA Intercompany Claims are presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code, and, therefore, are not entitled to vote to accept or reject the Plan.

    (i)    *Class 4C- RINA Intercompany Loans.*

        (i)    *Treatment*:  Notwithstanding anything in this Plan to the contrary, on the Effective Date, RINA Intercompany Loans shall remain effective and outstanding and be owned and held by the same applicable Person(s) that held and/or owned such RINA Intercompany Loans immediately prior to the Effective Date.

        (ii)    *Voting*:  Class 4C is Unimpaired.  Holders of RINA Intercompany Loans are presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code, and, therefore, are not entitled to vote to accept or reject the Plan.

    (j)    *Class 4D- RUNA Intercompany Loans.*

        (i)    *Treatment*:  Notwithstanding anything in this Plan to the contrary, on the Effective Date, RUNA Intercompany Loans shall remain effective and outstanding and be owned and held by the same applicable Person(s) that held and/or owned such RUNA Intercompany Loans immediately prior to the Effective Date.

        (ii)    *Voting*:  Class 4D is Unimpaired.  Holders of RUNA Intercompany Loans are presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code, and, therefore, are not entitled to vote to accept or reject the Plan.

    (k)    *Class 5A—RINA Equity Interests.*

        (i)    *Treatment*:  Notwithstanding anything in this Plan to the contrary, on the Effective Date, RINA Equity Interests shall remain effective and outstanding and be owned and held by the same applicable Person(s) that held and/or owned such RINA Equity Interests immediately prior to the Effective Date.

        (ii)    *Voting*:  Class 5A is Unimpaired.  Holders of RINA Equity Interests are presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code, and, therefore, are not entitled to vote to accept or reject the Plan.

#12012526 v6

(l)     *Class 5B—RUNA Equity Interests.*

　　(i)     *Treatment*:  Notwithstanding anything in this Plan to the contrary, on the Effective Date, RUNA Equity Interests shall remain effective and outstanding and be owned and held by the same applicable Person(s) that held and/or owned such RUNA Equity Interests immediately prior to the Effective Date.

　　(ii)    *Voting*:  Class 5B is Unimpaired.  Holders of RUNA Equity Interests are presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code, and, therefore, are not entitled to vote to accept or reject the Plan.

**Section 3.4** *Cram Down*.

　　If any Class of Claims or Equity Interests entitled to vote on the Plan shall not vote to accept the Plan, the Debtors shall (i) seek confirmation of the Plan under section 1129(b) of the Bankruptcy Code or (ii) amend or modify the Plan in accordance with Section 8.4 of the Plan.

**Section 3.5** *Confirmation of all Cases*.

　　Except as provided in Section 8.3 and Section 8.5, the Plan shall not be deemed to have been confirmed unless and until the Plan has been confirmed as to each of the Debtors.

**Section 3.6** *Discharge of Claims*.

　　Pursuant to 1141(c) of the Bankruptcy Code, all Claims and Equity Interests that are not expressly provided for and preserved herein shall be extinguished on the Effective Date. Upon the Effective Date, the Debtors and all property dealt with herein shall be free and clear of such Claims and interests, including, without limitation, Liens, security interests and all other encumbrances.

**Section 3.7** *Special Provisions Governing Unimpaired Claims*.

　　Except as otherwise provided herein, nothing under the Plan shall affect the Debtors' rights in respect of any Unimpaired Claims, including without limitation, all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claims.

## ARTICLE IV
## MEANS FOR IMPLEMENTATION OF THE PLAN

**Section 4.1** *Compromise of Controversies*.

　　In consideration for the distributions and other benefits provided under the Plan, the provisions of the Plan constitute a good faith compromise and settlement of all Claims and controversies resolved under the Plan, and the entry of the Confirmation Order shall constitute

-15-

the Bankruptcy Court's approval of such compromise and settlement under Bankruptcy Rule 9019.

Section 4.2 *Vesting of Assets*.

Except as otherwise provided in the Plan or in any Plan Document, on the Effective Date, title to all Assets of any Debtor shall vest in such Reorganized Debtor, free and clear of all Claims, Liens, encumbrances and other interests. On and after the occurrence of the Effective Date, except as otherwise provided in the Plan, the Reorganized Debtors may operate their businesses and may use, acquire and dispose of their Assets free of any restrictions of the Bankruptcy Code.

Section 4.3 *Continued Corporate Existence*.

Each of the Debtors, as Reorganized Debtors, shall continue to exist on and after the Effective Date as a separate legal entity with all of the powers available to such legal entity under applicable law, without prejudice to any right to alter or terminate such existence (whether by merger or otherwise) in accordance with such applicable law. On and after the occurrence of the Effective Date, the Reorganized Debtors shall be authorized to operate their respective businesses, and to use, acquire or dispose of Assets, without supervision or approval by the Bankruptcy Court, free from any restrictions of the Bankruptcy Code or the Bankruptcy Rules.

Section 4.4 *Release of Liens and Claims*.

Except as otherwise provided herein or in any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to ARTICLE III hereof, all Liens, Claims, mortgages, deeds of trust or other security interests against the property of any Estate shall be fully released and discharged, and all of the right, title and interest of any Holder of such Liens, Claims, mortgages, deeds of trusts or other security interests shall revert to the Reorganized Debtors and their successors and assigns. Notwithstanding, anything in this Section 4.4 to the contrary, however, the Liens securing Claims under the DIP Credit Agreement shall not be released (or deemed released) but rather shall, upon execution and delivery of the Exit Facility Documents, secure all obligations of the Reorganized Debtors under the Exit Facility.

Section 4.5 *Exit Facility*.

The Reorganized Debtors will enter into the Exit Facility on the Effective Date. All obligations then outstanding under the DIP Credit Agreement shall be rolled into and become obligations of the Reorganized Debtors under the Exit Facility. The obligations of the Reorganized Debtors under the Exit Facility shall be secured by a first priority Lien in and upon substantially all of the Assets of the Reorganized Debtors, subject to only customary permitted Liens. On the Effective Date, the Reorganized Debtors are authorized to execute and deliver those documents necessary or appropriate to obtain the Exit Facility. The Confirmation Order shall constitute an order of the Bankruptcy Court approving the Exit Facility.

Section 4.6 *Certificate of Incorporation and Bylaws.*

The certificates of incorporation and bylaws or other formation documents of the Debtors shall be amended as may be required to be consistent with the provisions of the Plan and the Bankruptcy Code. On or as soon as reasonably practicable after the Effective Date, each of the Reorganized Debtors shall file a new, or amend and restate its existing, certificate of incorporation with the secretary of state (or equivalent state officer or entity) of the state under which such Reorganized Debtor is or is to be incorporated, which, as required by section 1123(a)(6) of the Bankruptcy Code, shall prohibit the issuance of non-voting securities. After the Effective Date, each Reorganized Debtor may file a new, or amend and restate its existing, certificate of incorporation, charter and other constituent documents as permitted by the relevant state corporate law.

Section 4.7 *Corporate Action.*

Upon the Effective Date, by virtue of the solicitation of votes in favor of the Plan and entry of the Confirmation Order, all actions contemplated by the Plan shall be deemed authorized and approved in all respects. All matters provided for in the Plan involving the corporate structure of the Debtors or the Reorganized Debtors, and any corporate action required by the Debtors or the Reorganized Debtors in connection with the Plan, shall be deemed to have occurred and shall be in effect, without any requirement of further action by the directors or officers of the Debtors or the Reorganized Debtors. All directors and officers of the Debtors serving immediately prior to the Effective Date shall continue in the same capacities as directors and officers of the Reorganized Debtors upon the Effective Date. Upon the Effective Date, the appropriate officers of the Reorganized Debtors and members of the boards of directors of the Reorganized Debtors shall be authorized and directed to issue, execute and deliver the agreements and documents contemplated by the Plan (or necessary or desirable to effect the transactions contemplated by the Plan) in the name of and on behalf of the Reorganized Debtors, including the Exit Facility Documents. The authorizations and approvals contemplated in this Section 4.7 shall be effective notwithstanding any requirements under any applicable non-bankruptcy law.

Section 4.8 *Sources of Cash for Plan Distribution.*

Except as otherwise provided in the Plan or Confirmation Order, all Cash required for the payments to be made hereunder shall be obtained from the Exit Facility, payments to be made under the JCI Settlement Agreement and the Inteva Settlement Agreement, and the Debtors' and the Reorganized Debtors' operations and Cash balances.

## ARTICLE V
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Section 5.1 *Assumption of Executory Contracts and Unexpired Leases.*

(a)     All executory contracts and unexpired leases of the Debtors that are not (i) rejected by the Debtors prior to the Effective Date, (ii) subject to a motion seeking such rejection as of the Effective Date, or (iii) identified in the Plan Supplement on the schedule of "Rejected Executory Contracts and Unexpired Leases" shall be deemed to have been assumed by

the Debtors on the Effective Date pursuant to sections 365 and 1123 of the Bankruptcy Code without further notice or order of the Bankruptcy Court. The Plan Supplement will also include a schedule of "Assigned Executory Contracts and Unexpired Leases," which will reflect those executory contracts and unexpired leases to be assumed on the Effective Date by one Debtor and assigned on the Effective Date to the other Debtor.

(b)    Any counterparty to an executory contract or unexpired lease that fails to object timely to the proposed assumption of such executory contract or unexpired lease will be deemed to have consented to such assumption. Each executory contract and unexpired lease assumed pursuant to this section or by any order of the Bankruptcy Court, which has not been assigned to a third party before the Effective Date, shall revest in and be fully enforceable by the Reorganized Debtor that is the counterparty thereto in accordance with its terms, except as such terms are modified by the provisions of the Plan or any order of the Bankruptcy Court authorizing and providing for its assumption under applicable federal law.

Section 5.2 *Cure of Defaults for Assumed Executory Contracts and Unexpired Leases*.

(a)    Any monetary amount by which any executory contract or unexpired lease to be assumed pursuant to the Plan is in default shall be satisfied, in accordance with section 365(b)(1) of the Bankruptcy Code, by payment of the Cure Amount in Cash, on the Effective Date (or as soon as reasonably practicable thereafter), or upon such other terms as the parties to such executory contract or unexpired lease may otherwise agree. At least ten (10) days before the Confirmation Hearing, the Debtors shall serve upon counterparties to such executory contracts and unexpired leases, a notice of the proposed assumption, which will (i) list the applicable Cure Amount, if any; (ii) describe the procedures for filing objections thereto; and (iii) explain the process by which related disputes will be resolved by the Bankruptcy Court. Additionally, the Debtors shall file with the Bankruptcy Court at least ten (10) days before the Confirmation Hearing, a list of certain executory contracts and unexpired leases to be assigned pursuant to the Plan and the proposed Cure Amounts therefor. To the extent any executory contract or unexpired lease to be assumed pursuant to the Plan is not included on the list filed with the Bankruptcy Court, then the Cure Amount related to such executory contract or unexpired lease shall be $0.00.

(b)    Any objection by a counterparty to an executory contract or unexpired lease to the proposed assumption or related Cure Amount must be filed, served and actually received by the Debtors at least five (5) days before the Confirmation Hearing. Any counterparty to an executory contract or unexpired lease that fails to object timely to the proposed assumption or Cure Amount will be deemed to have assented to such matters. In the event of a dispute regarding (i) the Cure Amount; (ii) the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the contract or lease to be assumed or (3) any other matter pertaining to assumption, the cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order or orders resolving the dispute and approving the assumption. If a Final Order is entered allowing a Cure Amount in an amount in excess of the amount listed by the Debtors (or in any amount in excess of $0.00, if no Cure Amount has been listed by the Debtors), the Reorganized Debtors may elect to reject such executory contract or unexpired lease in lieu of assuming it by filing a notice of rejection with the Bankruptcy Court

within 21 days following entry of such Final Order, and such executory contract or unexpired lease shall thereupon for all purposes be treated as having been rejected and never assumed pursuant to section 365 of the Bankruptcy Code.

(c)       Any obligation incurred by a Debtor during the Chapter 11 Cases for payment of goods or services pursuant to any executory contract or unexpired lease to be assumed pursuant to the Plan but which obligation is not due and owing the counterparty to such executory contract or unexpired lease as of the deadline to object to the proposed Cure Amount, shall be paid by such Debtor in the ordinary course of business in accordance with the terms and conditions of any agreement relating thereto.

Section 5.3 *Rejection of Executory Contracts and Unexpired Leases.*

All executory contracts and unexpired leases listed on the schedule of "Rejected Executory Contracts and Unexpired Leases" in the Plan Supplement shall be deemed rejected as of the Effective Date. The Debtors reserve the right to amend the schedule of Rejected Executory Contracts and Unexpired Leases at any time prior to the occurrence of the Effective Date. The Confirmation Order shall constitute an order of the Bankruptcy Court approving the rejections described in this ARTICLE V pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date.

Section 5.4 *Claims Based on Rejection of Executory Contracts or Unexpired Leases.*

All proofs of claim with respect to Claims arising from the rejection of executory contracts or unexpired leases, if any, must be Filed within thirty (30) days after the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection. Any Claim arising from the rejection of an executory contract or unexpired lease for which proof of such Claim is not Filed within such time period shall forever be barred from assertion against the Debtors or the Reorganized Debtors, the Estates and their property, unless otherwise ordered by the Bankruptcy Court. Any Allowed Claim arising from the rejection of executory contracts or unexpired leases for which proof of such Claim timely has been Filed shall be, and shall be treated as, an Allowed RINA General Unsecured Claim or Allowed RUNA General Unsecured Claim, as appropriate, under the terms hereof, subject to any limitation under section 502(b) of the Bankruptcy Code or otherwise.

Section 5.5 *Indemnification of Directors, Officers and Employees.*

Any obligations or rights of the Debtors or Reorganized Debtors to defend, indemnify, reimburse or limit the liability of any Covered Persons pursuant to any applicable certificates of incorporation, by-laws, policy of providing employee indemnification, state law or specific agreement in respect of any claims, demands, suits, causes of action or proceedings against such Covered Person based upon any act or omission related to such Covered Person's service with, for or on behalf of the Debtors prior to the Effective Date, shall be treated as if they were executory contracts that are assumed under the Plan and shall survive the Effective Date and remain unaffected hereby, and shall not be discharged, irrespective of whether such defense, indemnification, reimbursement or limitation of liability is owed in connection with an occurrence before or after the Petition Date.

Section 5.6 *Compensation and Benefit Programs*.

Unless otherwise rejected by the Debtors prior to the Effective Date or subject to a motion seeking such rejection as of the Effective Date, all duly-authorized and validly-existing employment and severance policies and compensation and benefit plans, policies and programs of the Debtors applicable to their employees, retirees and non-employee directors, including all savings plans, retirement plans, healthcare plans, disability plans, severance benefit plans and life, accidental death and dismemberment insurance plans, shall be deemed to be, and treated, as executory contracts and, on the Effective Date, shall be assumed pursuant to sections 365 and 1123 of the Bankruptcy Code.

Section 5.7 *Contracts and Leases Entered Into After the Petition Date*.

Contracts and leases entered into after the Petition Date by any Debtor will be performed by the Debtor or Reorganized Debtor liable thereunder in the ordinary course of its business. Accordingly, such contracts and leases will survive and remain unaffected by entry of the Confirmation Order.

## ARTICLE VI
## PROVISIONS GOVERNING DISTRIBUTIONS

Section 6.1 *Date of Distributions*.

Except as otherwise provided in the Plan, any distribution to be made hereunder shall be made on the Effective Date or as soon as practicable thereafter. Any payment or act required to be made or done hereunder on a day that is not a Business Day shall be made or done on the next succeeding Business Day.

Section 6.2 *Special Rules for Distributions to Holders of Disputed Claims*.

Notwithstanding any provision otherwise in the Plan and except as otherwise agreed to by the relevant parties, no partial payments and no partial distributions shall be made with respect to a Disputed Claim until all such disputes in connection with such Disputed Claim have been resolved by settlement or Final Order.

Section 6.3 *Disbursing Agent*.

Except as otherwise provided in the Plan, all distributions under the Plan shall be made by the Reorganized Debtors as Disbursing Agent or such other entity designated by the Reorganized Debtors as the Disbursing Agent. The Disbursing Agent shall be empowered (i) to effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan, (ii) make all distributions contemplated by the Plan, (iii) without further order of the Bankruptcy Court, employ or contract with any Entities to assist in or make the distributions required by the Plan and (iv) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions of the Plan.

Section 6.4 *Delivery of Distributions and Undeliverable or Unclaimed Distributions*.

(a) *General*. Except as otherwise provided herein, the Debtors or the Reorganized Debtors, as applicable, shall make distributions to Holders of Allowed Claims at the address for each such Holder as indicated on the Debtors' records as of the date of any such distribution; *provided, however*, that the manner of such distributions shall be determined at the discretion of the Debtors or the Reorganized Debtors, as applicable; and *provided further*, that the address for each Holder of an Allowed Claim shall be deemed to be the address set forth in any Proof of Claim Filed by that Holder.

(b) *Undeliverable Distributions*. If any distribution or notice provided in connection with the Chapter 11 Cases to any Holder of an Allowed Claim is returned to the Disbursing Agent as undeliverable or otherwise is unclaimed, the Disbursing Agent shall make no further distribution to such Holder unless and until such Disbursing Agent is notified in writing of such Holder's then current address. On, or as soon as practicable after, the date on which a previously undeliverable or unclaimed distribution becomes deliverable and claimed, the Disbursing Agent shall make such distribution without interest thereon. Any Holder of an Allowed Claim that fails to assert a Claim hereunder for an undeliverable or unclaimed distribution within one year after the Effective Date shall be deemed to have forfeited its Claim for such undeliverable or unclaimed distribution and shall forever be barred and enjoined from asserting such Claim against any of the Debtors, the Estates or the Reorganized Debtors or their property. After the first anniversary of the Effective Date, all property or interests in property not distributed pursuant to this Section 6.4 shall be deemed unclaimed property pursuant to section 347(b) of the Bankruptcy Code. Such property or interests in property shall be returned by the Disbursing Agent to the Reorganized Debtors, and the Claim of any other Holder to such property or interests in property shall be discharged and forever barred. Nothing contained herein shall require, or be construed to require, the Disbursing Agent to attempt to locate any Holder of an Allowed Claim.

Section 6.5 *Setoff*.

The Debtors and the Reorganized Debtors shall have no obligation to make any distributions hereunder on account of an Allowed Claim until any Claims, rights and Causes of Action of any nature that the Debtors or the Reorganized Debtors may hold against the original or existing Holder of such Allowed Claim are paid in full. The Debtors may, pursuant to section 553 of the Bankruptcy Code or applicable non-bankruptcy law, set off against any Allowed Claim and the distributions to be made pursuant hereto on account of any Allowed, the amount of any Claims, Equity Interests, rights and Causes of Action of any nature that the Debtors or the Reorganized Debtors may hold against the Holder of any such Allowed Claim. Neither the failure to effect such a setoff nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors or the Reorganized Debtors of any such Claims, Equity Interests, rights and Causes of Action that the Debtors or the Reorganized Debtors may possess against any such Holder.

Section 6.6 *Withholding and Reporting Requirements.*

The Disbursing Agent shall comply with all applicable withholding and reporting requirements imposed by any federal, state or local taxing authority, and all distributions under the Plan shall be subject to any such withholding or reporting requirements.

# ARTICLE VII
## PROCEDURES FOR RESOLVING DISPUTED CLAIMS

Section 7.1 *Allowance of Claims.*

After the Effective Date, the Reorganized Debtors shall have and shall retain any and all rights and defenses that the Debtors had with respect to any Claim, except with respect to any Claim deemed Allowed under the Plan. Except as expressly provided in the Plan or in any order entered in the Chapter 11 Cases before the Effective Date (including, without limitation, the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under the Plan or the Bankruptcy Code, or the Bankruptcy Court has entered a Final Order, including, without limitation, the Confirmation Order, in the Chapter 11 Cases allowing such Claim. All settled Claims approved before the Effective Date pursuant to a Final Order of the Bankruptcy Court pursuant to Bankruptcy Rule 9019 or otherwise shall be binding on all parties. Notwithstanding any other provision of the Plan, no interest shall accrue or be Allowed on or as a part of any Claim for any period after the Petition Date (including, without limitation, for any period after the Effective Date), nor shall any fine, penalty or attorneys' fee be Allowed on or as a part of any Claim, except only as provided for in the DIP Order or under section 506(b) of the Bankruptcy Code.

Section 7.2 *Prosecution of Objections to Claims.*

On and after the Confirmation Date, the Debtors (or the Reorganized Debtors, as the case may be) (a) shall have the exclusive authority to file, settle, compromise, withdraw or litigate to judgment objections to Claims and (b) shall be permitted to settle or compromise any Disputed Claim without approval of the Bankruptcy Court. The Debtors (or the Reorganized Debtors, as the case may be) shall have the sole authority to administer and adjust the official claims register maintained in these Chapter 11 Cases to reflect any such settlements or compromises without any further notice to or action, order or approval of the Bankruptcy Court.

Section 7.3 *Estimation of Claims.*

The Debtors (or the Reorganized Debtors, as the case may be) shall be permitted, at any time, to request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to section 502(c) of the Bankruptcy Code, regardless of whether the Debtors (or the Reorganized Debtors, as the case may be) previously had objected to such Claim or whether the Bankruptcy Court had ruled on such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any Claim at any time during any litigation concerning any objection to such Claim, including during the pendency of any appeal relating to such objection. If the Bankruptcy Court estimates any contingent or unliquidated Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If such estimated amount constitutes a maximum limitation on the

-22-

amount of such Claim, the Debtors (or the Reorganized Debtors, as the case may be) may elect to pursue any supplemental proceedings to object to the allowance of such Claim. All of the aforementioned objection, estimation and resolution procedures are cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

Section 7.4 *Payments and Distributions on Disputed Claims*.

Notwithstanding any other provision to the contrary herein, no payments or distributions shall be made hereunder with respect to all or any portion of any Disputed Claim unless and until all objections to such Disputed Claim have been settled, withdrawn or determined by Final Order, and such Disputed Claim has become an Allowed Claim.

Section 7.5 *Expungement or Adjustment to Claims Without Objection*.

Any Claim that has been paid, satisfied or superseded may be expunged on the official claims register maintained in these Chapter 11 Cases by the Reorganized Debtors, and any Claim that has been amended may be adjusted thereon by the Reorganized Debtors, in both cases without a claims objection having to be Filed and without any further notice to or action, order or approval of the Bankruptcy Court.

Section 7.6 *Deadline to File Objections to Claims*.

Any objections to Claims shall be Filed no later than the Claims Objection Deadline. The Claims Objection Deadline may be extended by Order of the Court, on motion of the Reorganized Debtors or either of them, without need for notice to holders of Claims.

Section 7.7 *Late Filed Claims*.

**Except as otherwise agreed by the Debtors or the Reorganized Debtors, any and all proofs of claim Filed after the applicable Claims Bar Date shall be deemed Disallowed in full and expunged from the official claims register maintained in these Chapter 11 Cases for purposes of distribution or any other treatment under the Plan as of the Effective Date without any further notice to or action, order or approval of the Bankruptcy Court, and Holders of such Claims may not receive any distributions on account of such Claims, unless, on or before the date of the Confirmation Hearing, such late Claim has been deemed timely filed by a Bankruptcy Court order**.

Section 7.8 *Amendments to Claims*.

On or after the Effective Date, except as otherwise provided herein, a Claim may not be Filed or amended without the prior authorization of the Bankruptcy Court or the Reorganized Debtors, and, to the extent such prior authorization is not received, any such new or amended Claim Filed shall be deemed disallowed in full and expunged from the official claims register maintained in these Chapter 11 Cases without any further notice to or action, order or approval of the Bankruptcy Court.

#12012526 v6

# ARTICLE VIII
## CONDITIONS PRECEDENT TO CONFIRMATION AND EFFECTIVE DATE

Section 8.1 *Conditions Precedent to Confirmation*.

The Confirmation Order shall not be entered unless and until such Confirmation Order is in form and substance satisfactory to the Debtors.

Section 8.2 *Conditions Precedent to the Effective Date*.

The Effective Date shall not occur unless and until each of the following conditions has occurred or has been waived in accordance with the terms herein:

(a) the Plan and all Plan Supplement documents, including any amendments, modifications or supplements thereto, shall be reasonably acceptable to the Debtors;

(b) the Confirmation Order shall have been entered on the docket for the Chapter 11 Cases;

(c) the Confirmation Order shall have become a Final Order;

(d) the Debtors shall have adequate current and projected liquidity to permit the Reorganized Debtors to fund the distributions hereunder;

(e) the DIP Credit Agreement shall have converted into the Exit Facility;

(f) RINA shall have received the payment provided for in (i) section 2.3 of the JCI Settlement Agreement and (ii) section 2.1(C) of the Inteva Settlement Agreement.

(g) all statutory fees and obligations then due and payable to the U.S. Trustee shall have been paid and satisfied in full;

(h) all actions, documents, certificates and agreements necessary to implement this Plan, including all Plan Supplement documents, shall have been effected or executed and delivered to the required parties and, to the extent required, Filed with the applicable governmental units in accordance with applicable laws. All conditions precedent to such documents and agreements shall have been satisfied or waived pursuant to the terms of such documents or agreements; and

(i) all authorizations, consents and approvals determined by the Debtors to be necessary to implement the terms of the Plan shall have been obtained.

Section 8.3 *Waiver of Conditions*.

Any condition set forth in this ARTICLE VIII, other than the condition stated in Section 8.2(b) and Section 8.2(e), may be waived, in whole or in part, at any time by the Debtors without notice or leave or order of the Bankruptcy Court or any formal action other than proceeding to confirm or consummate the Plan.

-24-

Section 8.4 *Modification of Plan*.

The Debtors shall be permitted to amend, supplement or modify the Plan at any time, subject to the restrictions and requirements under section 1127 of the Bankruptcy Code, and except to the extent such amendment, supplement or modification affects a party's right of consent hereunder and such consent has not been previously obtained.

Section 8.5 *Effect of Withdrawal or Revocation*.

The Debtors reserve the right to revoke or withdraw the Plan at any time prior to the Confirmation Date. If the Plan is so revoked or withdrawn, or if the Effective Date fails to occur, then the Plan shall be deemed null and void in its entirety and of no force or effect. In such event, nothing contained herein shall (i) constitute a waiver or release of any Claims by or Claims against or Equity Interests in the Debtors; (2) prejudice in any manner the rights of the Debtors, any Holders or any other Entity; or (3) constitute an admission, acknowledgment, offer or undertaking by the Debtors, any Holders or any other Entity in any respect.

Section 8.6 *Reservation of Rights*.

The Plan shall have no force or effect unless and until the Confirmation Order is entered. Prior to the Effective Date, none of the Filing of the Plan, any statement or provision contained in the Plan or action taken by the Debtors with respect to the Plan shall be, or shall be deemed to be, an admission or waiver of any rights of any Debtor or any other party with respect to any Claims or Equity Interests or any other matter.

Section 8.7 *Substantial Consummation of Plan*.

Substantial consummation of the Plan under Bankruptcy Code section 1101(2) shall be deemed to occur on the Effective Date.

## ARTICLE IX
## EFFECT OF PLAN CONFIRMATION

Section 9.1 *Binding Effect*.

The Plan shall be binding upon and inure to the benefit of the Debtors, all current and former Holders of Claims and Equity Interests and their respective successors and assigns, including, but not limited to, the Reorganized Debtors.

Section 9.2 *Discharge of Claims*.

Except as otherwise provided in the Plan, upon the Effective Date, all existing Claims and Equity Interests shall be, and shall be deemed to be, discharged and terminated.

Section 9.3 ***Releases by the Debtors.***

**As of the Effective Date, for good and valuable consideration, the Debtors in their individual capacities will be deemed to release and forever waive and discharge all**

**Causes of Action that are based in whole or part on any act, omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtors, the Chapter 11 Cases, the Plan or the Disclosure Statement, and that could have been asserted by or on behalf of the Debtors or their Estates against (a) the Debtors' and their non-Debtor affiliates' and subsidiaries' present and former officers, directors, managers and employees, in their respective capacities as such, (b) holders of Equity Interests and their respective present and former officers, directors and employees, in their respective capacities as such, (c) the DIP Lender in its respective capacity as such, (d) each of the foregoing's respective successors and assigns, and each of their respective agents, attorneys, advisors, accountants, investment bankers, bankruptcy and restructuring advisors, and financial advisors, in their respective capacities as such; except, that nothing in this section shall be construed to release any party or entity from (a) conduct that (i) would violate any provision in a written agreement with the Debtors or their non-Debtor subsidiaries relating to nonsolicitation, noncompetition, nondisparagement, nondisclosure/use of trade secrets and confidential information, and inventions, and return of company property, or (ii) is, with respect to the Debtors and their non-Debtor subsidiaries, theft, tortious interference with contract or a prospective business relationship, or defamation (including slander and libel), as determined by a Final Order or (b) any books and records objections or other non-substantive objections by the Debtors to Claims Filed by such party or Entity against any Debtor and/or its Estate.**

Section 9.4 ***Release by Holders of Claims***.

> **Subject to the occurrence of the Effective Date, any Holder of a Claim, other than those Holders of Claims in Classes 4A, 4B, 4C and 4D, that is Impaired or Unimpaired under the Plan, for good and valuable consideration, will be presumed conclusively to have released each of (a) the Debtors, their non-Debtor affiliates and each of their respective present and former officers, directors, managers and employees, in their respective capacities as such, (b) RUS and its respective present and former officers, directors and employees, in their respective capacities as such, (c) the DIP Lender and (d) each of the foregoing's respective successors and assigns, and each of their respective agents, attorneys, advisors, accountants, investment bankers, bankruptcy and restructuring advisors, and financial advisors, in their respective capacities as such and any Person claimed to be liable derivatively through any of the foregoing, from any Causes of Action that are based in whole or part on the same subject matter as such Claim, *provided, however,* that the release provided for in this Section 9.4 shall not apply to any Holder of an Impaired Claim who timely submits a ballot which indicates that such Holder has opted out of the release provided for in this Section 9.4; *provided, further*, that the release provided for in this Section 9.4 shall not apply to any Holder of an Unimpaired Claim who provides written notice (an "Opt Out Notice") which (i) states the name and address of the Holder of the Unimpaired Claim and the nature and amount of the Claim of such party, (ii) states with clarity that the Holder is opting out of the release provided for in this Section 9.4 of the Plan and (iii) is RECEIVED by BMC Group, Inc. by first class mail (Attn: Recticel Voting Department, PO Box 3020, Chanhassen, MN 55317-3020) or by hand delivery or overnight courier (Attn: Recticel Voting Department, 18750 Lake Drive East, Chanhassen, MN 55317) and counsel to the Debtors (Pepper Hamilton, LLP, Attn: Robert S. Hertzberg, Esq. and Ross A. Hoogerhyde, Esq., 100 Renaissance Center, Suite**

**3600, Detroit, MI 48243 and Attn: David M. Fournier, Esq. and Evelyn J. Meltzer, Esq., Hercules Plaza, Suite 5100, 1313 Market Street, P.O. Box 1709, Wilmington, DE 19899-1709) no later than 5:00 p.m., Prevailing Eastern Time, on [Insert] 2010. Opt Out Notices transmitted by facsimile, telecopy transmission or electronic mail will not be accepted and the Holder of such Claim will not be treated as having opted-out of the release provided for in this Section 9.4 of the Plan. Any opt out of the release contained in this Section 9.4 shall not and shall not be construed in any way to affect any other release, exculpation or injunction provided for in the Plan.**

Section 9.5 *Exculpation and Limitation of Liability*.

**None of the Debtors, the Reorganized Debtors or the Releasees shall have or incur any liability to, or be subject to any right of action by, any Holder of a Claim or Equity Interest, or any other party in interest in the Chapter 11 Cases, or any of their respective agents, employees, representatives, financial advisors, attorneys or agents acting in such capacity, or affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to or arising out of, the Chapter 11 Cases, formulation, negotiation or implementation of the Plan, the solicitation of acceptances of the Plan, the pursuit of confirmation of the Plan, the confirmation of the Plan, the administration of the Plan or the property to be distributed under the Plan, except for their gross negligence, willful misconduct, fraud or criminal conduct as determined by a Final Order entered by a court of competent jurisdiction. Without limiting the generality of the foregoing, the Debtors, the Reorganized Debtors and the Releasees shall, in all respects, be entitled to rely reasonably upon the advice of counsel with respect to their duties and responsibilities under the Plan. Nothing in this Section 9.5 shall limit the liability of the professionals to their respective clients pursuant to the applicable ethical rules.**

Section 9.6 *Injunction*.

(a)     *General*.  **All Entities who have held, hold or may hold Claims or Equity Interests and all other parties in interest in the Chapter 11 Cases, along with their respective current and former employees, agents, officers, directors, principals and affiliates, are permanently enjoined, from and after the Effective Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind against the Debtors or the Reorganized Debtors or their affiliates, subsidiaries or Assets, (ii) enforcing, attaching, collecting or recovering by any manner or means of any judgment, award, decree or order against the Debtors or Reorganized Debtors or their affiliates, subsidiaries or Assets, (iii) creating, perfecting or enforcing any encumbrance of any kind against the Debtors or Reorganized Debtors or their affiliates, subsidiaries or Assets or (iv) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from the Debtors or Reorganized Debtors or their affiliates, subsidiaries or Assets or against the property or interests in property of the Debtors or Reorganized Debtors, on account of such Claims or Equity Interests; *provided, however,* that nothing contained herein shall preclude such Entities from exercising their rights pursuant to and consistent with the terms hereof, the terms of the DIP Order and the contracts, instruments, releases, indentures and other agreements and documents delivered under or in connection with the Plan.**

-27-

(b)     ***Injunction Against Interference With Plan***.  **Upon entry of the Confirmation Order, all Holders of Claims and Equity Interests and their respective current and former employees, agents, officers, directors, principals and affiliates shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan.  Each Holder of an Allowed Claim, by accepting distributions pursuant to the Plan, shall be deemed to have consented to the injunction provisions set forth in this Section 9.6.**

Section 9.7 *Term of Bankruptcy Injunction or Stays*.

All injunctions or stays provided for in the Chapter 11 Cases under section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence as of the Confirmation Date, shall remain in full force and effect until the Effective Date.

Section 9.8 *Termination of Subordination Rights and Settlement of Related Claims*.

The classification and manner of satisfying all Claims and Equity Interests under the Plan take into consideration all subordination rights, whether arising by contract or under general principles of equitable subordination, section 510(b) or 510(c) of the Bankruptcy Code, or otherwise.  All subordination rights that a Holder of a Claim or Equity Interest may have with respect to any distribution to be made under the Plan shall be discharged and terminated, and all actions related to the enforcement of such subordination rights shall be enjoined permanently.  Accordingly, distributions under the Plan to Holders of Allowed Claims will not be subject to payment of a beneficiary of such terminated subordination rights, or to levy, garnishment, attachment or other legal process by a beneficiary of such terminated subordination rights.

Section 9.9 *Preservation of Rights of Action*.

In accordance with section 1123(b) of the Bankruptcy Code, the Reorganized Debtors shall retain and have the exclusive right to enforce, after the Effective Date, any Claims, rights and Causes of Action that the Debtors or the Estates may hold against any Entity, including without limitation all Causes of Action under section 549 of the Bankruptcy Code, all transfers recoverable under section 550 of the Bankruptcy Code, all Causes of Action against any Entity on account of indebtedness and any other Causes of Action in favor of the Reorganized Debtors or their Estates.  The Reorganized Debtors shall be permitted to pursue such retained Claims, rights or Causes of Action, as appropriate, in accordance with the best interests of the Reorganized Debtors.

## ARTICLE X
## RETENTION OF JURISDICTION

Pursuant to sections 105(c) and 1142 of the Bankruptcy Code and notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, and related to, the Plan, the Confirmation Order and the Chapter 11 Cases to the fullest extent permitted by law, including jurisdiction to:

(a)     Allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Equity Interest, including the resolution of any

request for payment of any Administrative Claim and the resolution of any and all objections to the allowance or priority of Claims or Equity Interests;

(b)     Grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan for periods ending on or before the Effective Date;

(c)     Resolve any matters related to the assumption, assumption and assignment or rejection of any executory contract or unexpired lease to which the Debtors are party or with respect to which any Debtor or Reorganized Debtor may be liable, and hear, determine and, if necessary, liquidate, any Claims arising therefrom;

(d)     Ensure that distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

(e)     Decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters, and grant or deny any applications involving the Debtors that may be pending on the Effective Date;

(f)     Enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases and other agreements or documents created in connection with the Plan or the Confirmation Order;

(g)     Resolve any cases, controversies, suits or disputes that may arise in connection with the consummation, interpretation or enforcement of the Plan or any contract, instrument, release or other agreement or document that is executed or created pursuant to the Plan, or any Entity's rights arising from or obligations incurred in connection with the Plan or such other documents;

(h)     Modify the Plan before or after the Effective Date under section 1127 of the Bankruptcy Code or modify the Confirmation Order, or any contract, instrument, release or other agreement or document created in connection with the Plan or the Confirmation Order, or remedy any defect or omission or reconcile any inconsistency in any Bankruptcy Court order, the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement or document created in connection with the Plan or the Confirmation Order, in such manner as may be necessary or appropriate to consummate the Plan;

(i)     Hear and determine all applications for compensation and reimbursement of expenses of Professionals under the Plan or under sections 330, 331, 503(b), 1103 and 1129(c)(9) of the Bankruptcy Code; *provided, however*, that from and after the Confirmation Date, the payment of fees and expenses of the Reorganized Debtors, including fees and expenses of counsel, shall be made in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court;

(j)     Issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with the consummation, implementation or enforcement of the Plan or the Confirmation Order;

(k)     Hear and determine any rights, Claims or Causes of Action held or reserved by, or accruing to, the Debtors or the Reorganized Debtors pursuant to the Bankruptcy Code, the Confirmation Order or, in the case of the Debtors, any other applicable law;

(l)     Enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with the Chapter 11 Cases;

(m)     Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated, or distributions pursuant to the Plan are enjoined or stayed;

(n)     Determine any other matters that may arise in connection with or that relate to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, indenture or other agreement or document created in connection with the Plan or the Confirmation Order;

(o)     Enter an order of final decree closing the Chapter 11 Cases;

(p)     Hear and resolve all matters concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

(q)     Hear and resolve all matters involving the nature, existence or scope of the Debtors' discharge;

(r)     Hear and resolve all matters related to the property of the Estates from and after the Confirmation Date; and

(s)     Hear and resolve such other matters as may be provided for in the Confirmation Order or as may be authorized by the Bankruptcy Code.

Notwithstanding anything set forth in this ARTICLE X, the Bankruptcy Court shall not retain jurisdiction over the Exit Facility or any disputes arising thereunder from and after the occurrence of the Effective Date.

## ARTICLE XI
## MISCELLANEOUS PROVISIONS

Section 11.1 *Payment of Statutory Fees*.

All fees payable pursuant to section 1930 of title 28 of the United States Code after the Effective Date shall be paid before the closing of the Chapter 11 Cases, when due, or as soon thereafter as practicable.

Section 11.2 *Governing Law*.

Except to the extent that the Bankruptcy Code, the Bankruptcy Rules or other federal law, rule or regulation is applicable, or to the extent that an exhibit or supplement to the Plan provides otherwise, the Plan shall be governed by and construed in accordance with the

#12012526 v6

laws of the State of Michigan, without giving effect to the principles of conflict of laws thereof that would require application of the law of another jurisdiction.

Section 11.3 *Severability*.

If, prior to the entry of the Confirmation Order, any term or provision of the Plan is determined by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court, at the request of the Debtors shall have the power to alter and interpret such term or provision to render it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as so altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remaining terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

Section 11.4 *Inconsistency*.

In the event of any inconsistency among the Plan, the Disclosure Statement, the Plan Documents, any exhibit or schedule to the Plan or any other instrument or document created or executed pursuant to the Plan, the provisions of the Plan shall govern.

Section 11.5 *Filing of Additional Documents*.

The Debtors (or the Reorganized Debtors, as the case may be) shall File such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Debtors or Reorganized Debtors, as applicable, and all Holders of Claims receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

Section 11.6 *Service of Documents*.

All notices, requests and demands to or upon the Debtors or the Reorganized Debtors, or any of them, to be effective shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered (or, in the case of notice by facsimile transmission, when received and telephonically confirmed) addressed as follows:

Recticel Interiors North America, LLC
5600 Bow Pointe Drive
Clarkston, MI 48346-3155
Attn: Art Vartanian
Attn: Derek Strehl

with copies to:

#12012526 v6

Pepper Hamilton LLP
100 Renaissance Center
Suite 3600
Detroit, MI 48243
Attn: Robert S. Hertzberg
Attn: Ross A. Hoogerhyde

-and-

Pepper Hamilton LLP
Hercules Plaza, Suite 5100
1313 Market Street
P.O. Box 1709
Wilmington, Delaware 19899
Attn: David M. Fournier
Attn: Evelyn J. Meltzer

Section 11.7 *Section 1125(e) of the Bankruptcy Code.*

Upon entry of the Confirmation Order, the Debtors conclusively will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code and any applicable non-bankruptcy law, and pursuant to section 1125(e) of the Bankruptcy Code, the Debtors and their respective affiliates, agents, representatives, members, principals, shareholders, officers, directors, employees, advisors and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code and therefore will have no liability for the violation of any applicable law, rule or regulation governing the solicitation of votes on the Plan.

Section 11.8 *Exemption from Certain Transfer Taxes.*

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant hereto shall not be subject to any stamp tax or other similar tax or governmental assessment in the United States, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such tax or governmental assessment. Unless the Bankruptcy Court orders otherwise, all sales, transfers and assignments of owned and leased property approved by the Bankruptcy Court on or before the Effective Date shall be deemed to have been in furtherance of, or in connection with, the Plan.

Section 11.9 *Tax Reporting and Compliance.*

The Reorganized Debtors shall be authorized, in their discretion, to request an expedited determination under section 505(b) of the Bankruptcy Code for all tax returns filed for, or on behalf of, the Debtors for any and all taxable periods ending after the Petition Date through, and including, the Effective Date.

-32-

Section 11.10 *Schedules and Exhibits.*

All exhibits and schedules to the Plan, including the Plan Supplement, are incorporated into and are a part of the Plan as if fully set forth herein.

Section 11.11 *No Prejudice.*

If the Confirmation Order is vacated or the Effective Date has not occurred within one year of the last day of the Confirmation Hearing, then (a) the Confirmation Order shall be vacated, (b) the Plan shall be null and void in all respects, (c) no distributions under the Plan shall be made, (d) the Debtors and all holders of Claims and Equity Interests shall be restored to the *status quo ante* as of the day immediately preceding the Confirmation Date and (e) nothing contained in the Plan or the Disclosure Statement shall: (i) be deemed to constitute a waiver or release of (x) any Claims by any creditor or (y) any Claims against, or Equity Interests in, the Debtors; (ii) prejudice in any manner the rights of the Debtors or any party-in-interest; or (iii) constitute an admission, acknowledgment, offer or undertaking by the Debtors or any party in interest in any respect.

Section 11.12 *Allocation of Payments.*

To the extent that any Allowed Claim entitled to distribution hereunder is comprised of indebtedness and accrued but unpaid interest thereon, such distribution shall, for all income tax purposes, be allocated to the principal amount of such Claim first, and then, to the extent that the consideration exceeds such principal amount, to the portion of such Claim representing accrued but unpaid interest.

Section 11.13 *Dissolution of the Committee.*

Upon the occurrence of the Effective Date, the Committee shall be dissolved and its respective members shall be released and discharged from all further authority, duties, responsibilities and obligations relating to the Chapter 11 Cases.

Section 11.14 *Return of Security Deposits.*

Unless the Debtors have agreed otherwise in a written agreement or stipulation approved by the Bankruptcy Court, and except as the Reorganized Debtors may agree in writing, all security deposits provided by the Debtors to any Person or Entity at any time after the Petition Date, shall be returned to the Reorganized Debtors within twenty (20) days after the Effective Date, without deduction or offset of any kind except as permitted under the aforementioned order or writing.

Section 11.15 *Successors and Assigns.*

The rights, benefits and obligations of any Entity named or referred to herein shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Entity.

Section 11.16 *Reservation of Rights.*

Except as expressly set forth herein, the Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order. Neither the filing of the Plan, any statement or provision contained herein, nor the taking of any action by a Debtor or any other Entity with respect to the Plan, the Disclosure Statement or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the Holders of Claims or Equity Interests before the Effective Date.

Section 11.17 *Entire Agreement.*

Except as otherwise indicated, the Plan and the Plan Supplement supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings and representations on such subjects, all of which have been merged and integrated into the Plan.

Dated: February 8, 2010

RECTICEL NORTH AMERICA, INC.

By: _____
     Derek Strehl
     Secretary and Treasurer


RECTICEL INTERIORS NORTH AMERICA, LLC

By: _____
     Derek Strehl
     Secretary and Treasurer

#12012526 v6